Filed 9/17/13  In re Skyler F. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re SKYLER F. et. al., Persons Coming Under the Juvenile Court Law. | D063677 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ3277A-C) |
| Plaintiff and Respondent, | |
| v. | |
| JACK F. et al., | |
| Defendants and Appellants; | |
| SKYLER F., a Minor, | |
| Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant, Jack F.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant, Alma H.

Christy C. Peterson, under appointment by the Court of Appeal, for Appellant, Skyler F., a Minor.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.

Jamie a. Moran, under appointment by the Court of Appeal, for Minors, St. F. and Su. F.

Jack F. and Alma H. (the parents) appeal the judgment terminating their parental rights to their daughters, four-and-one-half-year-old St. F. and three-year-old Su. F. (the girls). The girls' brother, 10-and-one-half-year-old Skyler F., also appeals. All three appellants contend the juvenile court erred by finding the girls' relationship with Skyler did not warrant application of the sibling relationship exception to termination. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(v); further statutory references are to this Code.) Jack additionally contends the court erred by finding the beneficial relationship exception did not apply to his relationship with the girls. (§ 366.26, subd. (c)(1)(B)(i).) Alma joins in his contention. We affirm.

BACKGROUND

In August 2010, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions on behalf of the girls and Skyler (together, the children). The petitions alleged the parents used methamphetamine and marijuana and

2

exposed the children to domestic violence. At the time the petitions were filed, Skyler was eight years old, St. was two years old, and Su. was six months old.

Skyler was detained with the paternal grandmother. The girls were detained at Polinsky Children's Center for two weeks, then moved to a foster home. The court ordered supervised visitation for the parents.

In August 2010, the court made true findings on the petitions and ordered Skyler placed with a relative and the girls placed in a foster home. The court ordered reunification services for the parents.

In November 2010, the girls began a 60-day trial visit with Alma at a residential drug treatment program. In February 2011, the Agency filed section 387 supplemental petitions after Alma tested positive for methamphetamine and was asked to leave her program. The girls were detained in a foster home. One week later, they were moved to their previous foster home. In March, the court made true findings on the supplemental petitions and ordered the girls placed in foster care. In April, the girls were moved to a concurrent planning foster home. At the 12-month review hearing in October, the court terminated Alma's services.

By January 2012, Jack was having unsupervised and overnight visits with the girls. In February, he was arrested for drug possession and driving under the influence of alcohol. In March, he failed to appear for drug court and was terminated from the program. At the 18-month review hearing in April, the court terminated Jack's services and set a section 366.26 hearing.

In July 2012, the girls were moved to an emergency placement concurrent foster home due to neglect and other problems in their existing placement. A few days later, the new foster parents decided they could not care for the girls in addition to their own child. In late July, the girls were placed in a prospective adoptive home.

In November 2012, the court granted Skyler's section 388, subdivision (b) petition seeking to preserve his relationship with the girls, thus granting him standing to assert the sibling relationship exception. (*In re D.M.* (2012) 205 Cal.App.4th 283, 294.) At the section 366.26 hearing in March 2013, the court ordered a permanent plan of guardianship for Skyler, who remained in the home of the paternal grandmother, and terminated parental rights to the girls.

## THE BENEFICIAL RELATIONSHIP EXCEPTION

No one contests the finding that the girls are adoptable. If a dependent child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1); *In re Helen W.* (2007) 150 Cal.App.4th 71, 80-81.) An exception exists if a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome . . . ." (*Ibid.*) The existence of a

4

beneficial relationship is determined by factors such as "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*Id*. at p. 576.) Examining the evidence in the light most favorable to the judgment (*ibid*.), we conclude substantial evidence supports the court's finding that, in general, Jack maintained regular visitation and contact, but his relationship with the girls did not satisfy the criteria of *In re Autumn H.*

Four-and-one-half-year-old St. and three-year-old Su. had been out of Jack's care for more than two and one-half years, more than half of St.'s life and most of Su.'s life. The girls had lived in the prospective adoptive home for eight months, longer than Su. had lived with Jack. The girls had finally found stability after being moved eight times during this case. The prospective adoptive parents were committed to adopting the girls and loved them as their own children. The girls were very attached to the prospective adoptive parents, viewed them as their parents and were thriving in their care. The girls had detached from Jack and there were positive and negative aspects to their visits. According to psychologist Robert Kelin, who conducted a bonding study, the girls' bonds with Jack were not strong; St.'s bond was moderate and Su.'s bond was mild. The social worker agreed with Dr. Kelin and concluded the girls were not very attached to Jack.

Jack relies on *In re S.B.* (2008) 164 Cal.App.4th 289, in which this court concluded the juvenile court erred by declining to apply the beneficial relationship exception. (*Id.* at p. 301.) That case is distinguishable. There, the appellant father "complied with 'every aspect' of his case plan" and placed the child's needs above his

5

own. (*Id*. at p. 298.) The child displayed a strong attachment to the father (*id*. at pp. 298), "became upset when the visits ended and wanted to leave with [him]" (*id*. at p. 294). They "had 'an emotionally significant relationship.' " (*Id*. at pp. 298.)

THE SIBLING RELATIONSHIP EXCEPTION

Section 366.26, subdivision (c)(1)(B)(v), provides an exception to termination of parental rights when there would be a substantial interference with the child's sibling relationship and the severance of the relationship would be so detrimental to the child as to outweigh the benefits of adoption. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951-953.) The juvenile court must "balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer." (*Id.* at p. 951, citing *In re Autumn H*., *supra*, 27 Cal.App.4th at p. 575.) Factors to be considered include whether the children were raised in the same home; whether they shared significant common experiences or have existing close and strong bonds; and whether ongoing contact is in the child's best interests, including his or her long-term emotional interests, as compared to the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(v).) The court does not consider detriment to the sibling. (*In re D.M., supra,* 205 Cal.App.4th at p. 291.) "[T]he application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

Substantial evidence supports the court's finding that the girls' need for permanence far outweighed their need for continued contact with Skyler. (*In re L.Y.L.,*

6

*supra,* 101 Cal.App.4th at pp. 947, 952.)  Four-and-one-half-year-old St. lived with Skyler until she was two years old.  Three-year-old Su. lived with Skyler until she was six months old.  The girls' memories of living with Skyler ranged from limited to none. During this case, there were sibling visits, and the girls were happy to see Skyler and were affectionate with him.  By October 2012, the girls rarely asked for Skyler except in connection with visits.  In March 2013, Dr. Kelin observed the children interact for about 10 minutes and observed each girl interact with Skyler separately for about 35 minutes. Dr. Kelin concluded St. had a moderate to strong bond with Skyler and Su. had a moderate bond with Skyler.  The social worker, who had known the children for a year, believed there was not a strong sibling bond and termination of parental rights would not be detrimental to the girls.

DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

7